IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CORNHUSKER RBM, LLC, *et al.*, | ) | Case No. 13-26443 |
| | ) | (Jointly Administered) |
| Debtors. | ) | Honorable Jack B. Schmetterer |

## **NOTICE OF MOTION**

To:   Attached Service List

     PLEASE BE ADVISED that on July 23, 2013 at 10:00 a.m., we shall appear before the Honorable Jack B. Schmetterer in courtroom 682 of the courthouse located at 219 South Dearborn Street, Chicago, Illinois, and then and there present the *Debtors' Motion Pursuant to Section 366 of the Bankruptcy Code for the Entry of an Order: (I) Prohibiting Utilities from Altering, Refusing or Discontinuing Services to, or Discriminating Against, the Debtors on Account of Prepetition Amounts Due; (II) Determining That Utilities Are Adequately Assured of Future Payment; (III) Establishing Procedures for Determining Requests for Additional Assurance; and (IV) Granting Certain Related Relief*. A copy of the motion has been filed with the Court, served upon the United States Trustee and the attached service list, and is available upon written request to the undersigned.

Dated: July 18, 2013                                                          /s/ Paul M. Bauch

Paul M. Bauch (ARDC #6196619)
Carolina Y. Sales (ARDC #6287277)
BAUCH & MICHAELS, LLC
53 W. Jackson Boulevard, Suite 1115
Chicago, Illinois 60604
Tel: (312) 588-5000
Fax: (312) 427-5709

## **CERTIFICATE OF SERVICE**

      The undersigned attorney certifies that on July 18, 2013, we caused this document to be served upon the persons identified on the attached service list by ❏ personally delivering a copy to the recipient at his or her respective address before 4:00 P.M; or ☒ mailing a copy to the recipient at his or her respective address by depositing the same in United States Post Office Box with proper first class postage affixed thereto; or ☒ personally delivering a copy to the recipient at his or her respective facsimile transmittal number, this transmittal being sent from a facsimile machine at 312-427-5709, and a copy of the facsimile transmittal record being attached hereto; or ☒ electronically delivering a copy through the Court's CM/ECF filing system.

                                                /s/ Paul M. Bauch

Paul M. Bauch (ARDC # 6196619)
Carolina Y. Sales (ARDC # 6287277)
BAUCH & MICHAELS, LLC
53 W. Jackson Boulevard, Suite 1115
Chicago, Illinois 60604
Tel: (312) 588-5000
Fax: (312) 427-5709

# SERVICE LIST

**VIA CM/ECF:**

Jessica L Adelman on behalf of Creditor Pipe Fitters' Welfare Fund, Local 597
adelman@johnsonkrol.com

Jeffrey A Krol on behalf of Creditor Pipe Fitters' Welfare Fund, Local 597
jeffkrol@johnsonkrol.com

Patrick S Layng
USTPRegion11.ES.ECF@usdoj.gov

Joseph E Mallon on behalf of Creditor Pipe Fitters' Welfare Fund, Local 597
mallon@johnsonkrol.com,
gonzalez@johnsonkrol.com;foderaro@johnsonkrol.com;jessica@johnsonkrol.com

**VIA U.S. Mail:**

MIDI, LLC, 1420 Spring Hill Rd., #600, McLean, VA 22102

High Tech Medical Park, 11800 Southwest Hwy., Palos Heights, IL 60463

Medquest Associates, Inc., 4300 N. Point Pkwy., 2nd Fl., Alpharetta, GA 30022

MRI Consultants, 446 E. Ontario St., Ste. 106, Chicago, IL 60611

Suburban Imaging, 4801 W. 81st St., Minneapolis, MN 55437

Oakbrook Xray & Imaging, 2425 W. 22nd St., Ste. 105, Oak Brook, IL 60523

Advantage Imaging, LLC, 3733 Park East Dr. #100, Beachwood, OH 44122

Servant Medical Imaging, 2408 E. 81st St., Ste. 107, Tulsa, OK 74137

Northwestern Medical Imaging, 1946 45th Ave., Munster, IN 46321

Diagnostic Health Corp., 2764 Pelham Pkwy, Pelham, AL 35124

Imaging Partners of Missouri, 14825 N. Outer Forty Dr., Chesterfield, MO 63017

CDI/Center for Diagnostic Imaging, 5775 Wayzata Blvd., Ste. 450, St. Louis Park, MN 55416

The Imaging Center - IN, 7631 W. Jefferson Blvd., Fort Wayne, IN 46804

Oak Lawn MR & Imaging Center, 6240 W. 95th St., Oak Lawn, IL 60453

Libertyville Associates, 333 Peterson Rd., Ste. 230, Libertyville, IL 60048

Midwest Center for Advanced Imaging-Naperville, 4355 Montgomery Rd., Naperville, IL 60564

Advantage Diagnostic Imaging Center, 2980 S. Jones Blvd., Suite E, Las Vegas, NV 89146

Proscan Imaging, 5400 Kennedy Avenue, Cincinnati, OH 45213

Inmed Diagnostic Services of Illinois-Carterville, 10419 Fleming Rd., Carterville, IL 62918

Neurology Consultants-IL, 3330 W. 17, Hazel Crest, IL 60429

ComEd – Legal Dept., P.O. Box 805379, Chicago, IL 60680-5379

**VIA FACSIMILE:**

AT&T Bankruptcy Department, P.O. Box 769, Arlington, TX 76004, Fax:888-826-0132

Madison Telephone Co., P.O. Box 29, Staunton, IL 62088, Fax:618-635-7213 Attn: Jenny

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CORNHUSKER RBM, LLC, *et al.*, | ) | Case No. 13-26443 |
| | ) | (Jointly Administered) |
| Debtors. | ) | Honorable Jack B. Schmetterer |

**DEBTORS' MOTION PURSUANT TO SECTION 366 OF THE BANKRUPTCY CODE FOR THE ENTRY OF AN ORDER: (I) PROHIBITING UTILITIES FROM ALTERING, REFUSING OR DISCONTINUING SERVICES TO, OR DISCRIMINATING AGAINST, THE DEBTORS ON ACCOUNT OF PREPETITION AMOUNTS DUE; (II) DETERMINING THAT UTILITIES ARE ADEQUATELY ASSURED OF FUTURE PAYMENT; (III) ESTABLISHING PROCEDURES FOR DETERMINING REQUESTS FOR ADDITIONAL ASSURANCE; AND (IV) GRANTING CERTAIN RELATED RELIEF**

Cornhusker RBM, LLC ("**Cornhusker**"), DiaTri, LLC ("**DiaTri**"), Midwest Diagnostic Management, LLC ("**Midwest**"), Advanced Ancillary Services, LLC ("**Advanced Ancillary**") and Diagnostic P.E.T. Network, LLC ("**Diagnostic P.E.T.**") (each a "**Debtor**" and collectively, the "**Debtors**"), pursuant to Section 366 of title 11 of the United States Code (11 U.S.C. §§ 101 *et. seq.*, as amended, the "Bankruptcy Code"), hereby move (the "**Motion**") this Court for entry of interim and final orders in the forms attached hereto as proposed orders: (i) prohibiting utilities from altering, refusing or discontinuing services to, or discriminating against, the Debtors on account of prepetition amounts due; (ii) determining that the utilities are adequately assured of future payment; (iii) establishing procedures for determining requests for additional assurance of future payment; and (iv) granting certain related relief. In further support of this Motion, the Debtors respectfully state as follows:

## I. <u>JURISDICTION</u>

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ l334 and 157. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

## II. <u>BACKGROUND</u>

3. On June 28, 2013 (the "**Petition Date**"), the Debtors filed separate voluntary petitions for relief under chapter 11 of title 11, United States Code (the "**Bankruptcy Code**") with the United States Bankruptcy Court for the Northern District of Illinois (the "**Bankruptcy Court**"), thereby commencing the above-entitled cases (the "**Cases**"). The Debtors continue to manage and operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. The Debtors have substantially all of the rights, powers and responsibilities of a trustee in bankruptcy pursuant to 11 U.S.C. § 1107(a).

4. No creditors' committee has been appointed in the Debtors' chapter 11 Cases, and no trustee or examiner has been appointed. On July 9, 2013, this Court entered orders in each Debtor's case directing joint administration of the Cases.

5. The Debtors offer employers a way to control health care costs for diagnostic services such as MRI, CT, and P.E.T. Scans. In addition, they offer retrospective bill review and audits for all in-patient hospital and out-patient surgical procedures as well as effective cost containment services for oncology, dialysis and pharmacy expenditures. These services benefit employers and their insurers seeking to control healthcare costs, third party administrators needing to

carve out expensive procedures for their clients, and any other union or coalition that is looking to bring more value to their clients.

6. Due to unfortunate management decisions and problems that were caused by a severe slowdown in payments resulting from communication issues which have been rectified, the Debtors suffered financially.

### III. RELIEF REQUESTED

7. Pursuant to Section 366(a) of the Bankruptcy Code, the Debtors seek entry of an interim order ("**Interim Order**") (a) prohibiting those utility companies (collectively, the "Utility Companies" and each, individually, a "**Utility Company**") currently providing services, or that will provide services, to the Debtors from altering, refusing or discontinuing services to, or discriminating against the Debtors on account of prepetition amounts due, pending entry of a final order granting the relief sought herein (the "**Final Order**"); (b) determining that the Utility Companies have received adequate assurance of payment for post-petition utility service; (c) establishing certain procedures for determining requests for additional assurance; (d) permitting Utility Companies to opt out of the procedures established herein; and (e) scheduling a final hearing on the Motion (the "**Final Hearing**"). The Debtors will seek entry of the Final Order granting the relief requested herein on a permanent basis at the Final Hearing.

8. The Debtors currently use electricity and telephone services provided by the utility companies (the "**Utility Companies**") on the list attached hereto as Exhibit A (the "**Utilities Service List**"). In addition, the Debtors are requesting that this Motion apply to all of the Debtors' utility companies, whether or not any

3

given utility company is included on the Utilities Service List. The Debtors have proposed a procedure for supplementing the Utilities Service List.

9. Uninterrupted utility service is essential to the Debtors' ongoing operations. The Debtors could not operate their business in the absence of continuous utility service. Should any Utility Company refuse or discontinue service, even for a brief period of time, the Debtors will be forced to cease their operations, resulting in a substantial disruption of their business and loss of revenue. The temporary or permanent discontinuation of utility services would irreparably harm the Debtors.

10. The Debtors intend to pay their postpetition obligations to the Utility Companies on a timely basis. The Debtors will make these payments from cash generated through their continued operations.

11. Pursuant to Section 366(c)(2) of the Bankruptcy Code, a utility may alter, refuse or discontinue a chapter 11 debtor's utility service if the utility does not receive from the debtor or the trustee adequate assurance of payment within 30 days of the commencement of the debtor's chapter 11 case. Section 366(c)(1)(A) of the Bankruptcy Code defines the phrase "assurance of payment" to mean, among other things, a cash deposit. Accordingly, the Debtors propose to provide a deposit to any requesting Utility Company in an amount equal to (i) 100 percent of the prepetition amounts due if such prepetition amounts due are $2,000 or less, or (ii) if the prepetition amounts due are greater than $2,000, then the Debtors' calculation of the cost of two (2) weeks' worth of service, based on the historical average over the twelve (12) month period ending before the Petition Date. A request for, and

4

acceptance of, an Adequate Assurance Deposit shall be deemed an acknowledgement and admission by the Utility Company that the Adequate Assurance Deposit is the form of adequate assurance that is satisfactory to it, within the meaning of section 366 of the Bankruptcy Code.

12. Likewise, any Utility Company that does not timely request an Adequate Assurance Deposit within 30 days after the Petition Date (the "Request Deadline") and does not file an Objection (as defined herein) and/or timely request to opt out of the Adequate Assurance Procedures (as defined herein) shall be deemed to have adequate assurance that is satisfactory to it, within the meaning of Section 366 of the Bankruptcy Code.

13. The Debtors submit that the availability of the Adequate Assurance Deposit (if timely requested), in conjunction with the Debtors' demonstrated ability to pay for future utility service in the ordinary course of business (collectively, the "Proposed Adequate Assurance"), constitutes sufficient adequate assurance of future payment to the Utility Companies to satisfy the requirements of Section 366 of the Bankruptcy Code. Nonetheless, if any Utility Company believes additional assurance is required, it may request such assurance pursuant to the procedures described below.

## IV. THE PROPOSED ADEQUATE ASSURANCE PROCEDURES

14. To address the right of any Utility Company under Section 366(c)(2) of the Bankruptcy Code to seek adequate assurance satisfactory to it, the Debtors propose that the following procedures (the "**Adequate Assurance Procedures**") be adopted:

5

a. Any Utility Company desiring assurance of future payment for utility services beyond the Proposed Adequate Assurance must serve a request (an "**Additional Assurance Request**") so that it is received by the Debtors' counsel by the Request Deadline at Bauch & Michaels, LLC, 53 W. Jackson Blvd., Suite 1115, Chicago, IL 60604, Attn: Paul M. Bauch.

b. Any Additional Assurance Request must: (i) be made in writing; (ii) set forth the location(s) for which utility services are provided and relevant account number(s); (iii) describe any deposits, prepayments or other security currently held by the requesting Utility Company; (iv) explain why the requesting Utility Company believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment; and (v) set forth the form and amount (if applicable) of additional adequate assurance requested.

c. Upon the Debtors' receipt of an Additional Assurance Request at the addresses set forth above, the Debtors shall have the greater of (i) 14 days from the receipt of such Additional Assurance Request; or (ii) 30 days from the entry of the Interim Order (collectively, the "**Resolution Period**") to negotiate with the requesting Utility Company to resolve its Additional Assurance Request. The Resolution Period may be extended by agreement of the Debtors and the applicable Utility Company.

d. The Debtors, in their discretion, may resolve any Additional Assurance Request by mutual agreement with the requesting Utility Company and without further order of the Court, and may, in connection with any such resolution, in their discretion, provide the requesting Utility Company with additional adequate assurance of future payment in a form satisfactory to the Utility Company, including, but not limited to, cash deposits, prepayments and/or other forms of security, if the Debtors believe such additional assurance is reasonable.

e. If the Debtors determine that an Additional Assurance Request is not reasonable, and it is not able to resolve such request during the Resolution Period, the Debtors, during or immediately after the Resolution Period (as the same may be extended by agreement of the Debtors and the Utility Company in question), will request a hearing before this Court to determine the adequacy of assurances of payment made to the requesting Utility Company (the "**Determination Hearing**"), pursuant to Section 366(c)(3)(A) of the Bankruptcy Code.

f. Pending the resolution of the Additional Assurance Request at a Determination Hearing, the Utility Company making such request shall be restrained from discontinuing, altering or refusing service to the Debtors on account of unpaid charges for prepetition services or on account of any objections to the Proposed Adequate Assurance.

g. Other than through the Opt-Out Procedures (as defined herein), any Utility Company that does not comply with the Adequate Assurance

7

Procedures set forth herein is deemed to have adequate assurance that is satisfactory to it, within the meaning of Section 366 of the Bankruptcy Code, and is forbidden from discontinuing, altering or refusing service on account of any unpaid prepetition charges, or requiring additional assurance of payment (other than the Proposed Adequate Assurance). The Interim Order shall be deemed the Final Order with respect to all Utility Companies that do not timely file and serve an Objection (as defined herein).

## V. THE PROPOSED OPT-OUT PROCEDURES

15. As noted above, Section 366(c) of the Bankruptcy Code requires the Debtors to provide utility companies, within 30 days of the Petition Date, with "adequate assurance of payment for utility service that is satisfactory to the utility." 11 U.S.C. § 366(c)(2). Thereafter, any such adequate assurance provided by the Debtors may be modified by the Court after notice and a hearing under Section 366(c)(3)(A) of the Bankruptcy Code. Under the Adequate Assurance Procedures, however, the Debtors may seek a determination of appropriate adequate assurance at a Determination Hearing held after the first 30 days of this case, without providing interim assurances deemed "satisfactory" to the Utility Company. Although the Adequate Assurance Procedures are reasonable, certain Utility Companies might assert that the procedures as implemented are not strictly in compliance with Section 366 of the Bankruptcy Code if an adequate assurance dispute is not resolved within the 30 days following the Petition Date. If, as a result, any Utility Company wishes to opt out of the Adequate Assurance Procedures, the

8

Debtors submit that the Court should schedule a hearing and issue a ruling on the amount of adequate assurance to be provided to such Utility Companies.

16. To avoid any argument that the Debtors have not fully complied with Section 366 of the Bankruptcy Code, the Debtors propose the following procedures (the "**Opt-Out Procedures**"):

    a. A Utility Company that desires to opt-out of the Adequate Assurance Procedures must file an objection (the "**Objection**") with the Bankruptcy Court and serve such Objection so that it is actually received within 15 days of entry of the Interim Order by the Debtors' counsel at Bauch & Michaels, LLC, 53 W. Jackson Blvd., Suite 1115, Chicago, IL 60604, Attn: Paul M. Bauch.

    b. Any Objection must: (i) be made in writing; (ii) set forth the location(s) for which utility services are provided to the Debtors and the relevant account number(s); (iii) describe any deposits, prepayments or other security currently held by the objecting Utility Company; (iv) explain why the objecting Utility Company believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment; and (v) identify, and explain the basis of, the proposed adequate assurance requirement under Section 366(c)(2) of the Bankruptcy Code.

    c. The Debtors, in their discretion, may resolve any Objection by mutual agreement with the objecting Utility Company and without further order of the Court, and may, in connection with any such resolution, in their discretion, provide such objecting Utility Company with

additional assurance of future payment, including, but not limited to, cash deposits, prepayments and/or other forms of security, if the Debtors believe such additional assurance is reasonable. In the event that the Debtors and any objecting Utility Company, pursuant to this paragraph, consensually resolve an Objection to the Adequate Assurance Procedures, such Utility Company shall withdraw its Objection prior to any hearing date set by the Court.

d. If the Debtors determine that an Objection is not reasonable and/or the Debtors are not otherwise able to consensually resolve an Objection with a Utility Company, then such Objection will be heard at the Final Hearing.

e. Any Utility Company that does not timely file an Objection as set forth above is deemed to consent to, and shall be bound by, the Adequate Assurance Procedures.

17. It is possible that, despite the Debtors' best efforts, certain Utility Companies have not yet been identified by the Debtors or included on the Service List. To the extent that the Debtors identify additional Utility Companies, the Debtors will serve copies of the Interim Order and Final Order on such newly-identified Utility Companies. The Debtors request that the Interim Order and Final Order be binding on all Utility Companies, subject to their rights to the Proposed Adequate Assurance and to request additional adequate assurance.

## VI. <u>ARGUMENT</u>

18. Section 366 of the Bankruptcy Code states, in relevant part, as follows:

10

> (a) Except as provided in subsections (b) and (c) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for entry of relief was not paid when due. [. . .]
>
> (c)(2) Subject to paragraphs (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility.

11 U.S.C. § 366.

19.    The policy underlying Section 366 of the Bankruptcy Code is to protect debtors from utility service cutoffs upon the filing of a bankruptcy case, while at the same time providing utility companies with adequate "assurance of payment" for postpetition utility service. *See* H.R. Rep. No. 95-595, at 350 (1978), *reprinted* in 1978 U.S.C.C.A.N. 5963, 6306. Section 366(c)(1) of the Bankruptcy Code, as recently modified in October 2005, defines "assurance of payment" to mean several enumerated forms of security (*e.g.*, cash deposits, letters of credit, prepayment for utility service) while excluding from the definition certain other forms of security (*e.g.*, administrative expense priority for a utility's claim). In addition, Section 366(c)(3)(B) of the Bankruptcy Code provides that a court may not consider certain facts (*e.g.*, a debtor's prepetition history of making timely payments to a utility) in making a determination of adequate assurance of payment.

20.    Section 366(c) of the Bankruptcy Code not only fails to establish a minimum amount of adequate "assurance of payment," but explicitly empowers the court to determine the appropriate level of adequate assurance required in each

11

case. *See* 11 U.S.C. § 366(c)(3)(A) ("On request of a party in interest and after notice and a hearing, the Court may order modification of an assurance of payment.")

21. Thus, nothing within Section 366 of the Bankruptcy Code prevents a court from ruling that, on the facts of the case before it, the amount required to adequately assure future payment to a utility company is nominal, or even zero. Prior to the enactment of Section 366(c) of the Bankruptcy Code, courts enjoyed precisely the same discretion to make such rulings pursuant to Section 366(b) of the Bankruptcy Code, and frequently did so. *See Virginia Elec. & Power Co. v. Caldor, Inc. – N.Y.*, 117 F.3d 646, 650 (2d Cir. 1997) ("Even assuming that 'other security' should be interpreted narrowly, we agree with the appellees that a bankruptcy court's authority to 'modify' the level of the 'deposit or other security,' provided for under § 366(b), includes the power to require no 'deposit or other security' where none is necessary to provide a utility supplier with "adequate assurance of payment.").

22. Moreover, Congress has not changed the requirement that the assurance of payment only be "adequate." Courts construing Section 366(b) of the Bankruptcy Code have long recognized that adequate assurance of payment does not constitute an absolute guarantee of the debtor's ability to pay. *See In re Penn Jersey Corp.*, 72 B.R. 981, 982 (Bankr. E.D. Pa. 1987) (stating that Section 366(b) of Bankruptcy Code "contemplates that a utility receive only such assurance of payment as is sufficient to protect its interests given the facts of the debtor's financial circumstances"), *abrogated on other grounds by In re Lease-a-Fleet, Inc.*, 131 B.R. 945, 950 n.1 (Bankr. E.D. Pa. 1991); *accord In re Caldor, Inc.-N.Y.,* 199

12

B.R. 1, 3 (S.D.N.Y. 1996) ("Section 366(b) requires [a] [b]ankruptcy [c]ourt to determine whether the circumstances are sufficient to provide a utility with 'adequate assurance' of payment. Courts have recognized that "[i]n deciding what constitutes 'adequate assurance' in a given case, a bankruptcy court must 'focus upon the need of the utility for assurance, and to require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources.'" *Caldor*, 117 F.3d at 650 (emphasis in original) (quoting *Penn Jersey*, 72 B.R. at 985). The statute does not require an 'absolute guarantee of payment.") (citation omitted), *aff'd sub nom. Virginia Elec. & Power Co. v. Caldor, Inc.-N.Y.*, 117 F.3d 646 (2d Cir. 1997); *In re Adelphia Bus. Solutions, Inc.*, 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002) (same); *Steinbach v. Tucson Elec. Power Co. (In re Steinebach)*, 303 B.R. 634, 641 (Bankr. D. Ariz. 2004) ("Adequate assurance of payment is not, however, absolute assurance…. all § 366(b) requires is that a utility be protected from an unreasonable risk of non-payment"). Therefore, despite its language allowing a utility to take adverse action against the debtor should the debtor fail to provide adequate assurance of future payment "satisfactory to the utility," Section 366 of the Bankruptcy Code does not require that the assurance provided be "satisfactory" once a party seeks to have the Court determine the appropriate amount of adequate assurances.

23.     The Debtors submit that, given the foregoing, entry of the Interim Order is consistent with, and fully satisfies, the requirements of Section 366 of the Bankruptcy Code. Far from offering the Utility Companies nominal (or even no) additional assurance of payment, the Debtors seek authority to provide the Utility

13

Companies, upon request, with significant prepayments for services and procedures pursuant to which the Utility Companies can seek greater or different security. When complemented by the Debtors' ability to pay through access to cash from continued operations, such assurance of payment significantly alleviates (or eliminates) any honest concern of nonpayment on the part of the Utility Companies, and is thus clearly "adequate."

24.     Relief similar to the relief requested herein has been granted by this and other courts in other chapter 11 cases. *See, e.g.*, *In re Enesco Group, Inc.*, Case No. 07-0565 (ABG) (Bankr. N.D. Ill. Feb. 7, 2007); *In re Werner Holding Co. (DE), Inc.*, Case No. 06-10578 (Carey, K.) (Bankr. D. Del. 2006); *In re Pliant Corporation*, Case No. 06-10001 (Walrath, M.) (Bankr. D. Del. 2006); *In re J.L. French Automotive Castings, Inc.*, Case No. 06-10119 (Walrath, M.) (Bankr. D. Del. 2006).

WHEREFORE, the Debtors request that this Court enter the Interim Order and set a Final Hearing to grant the relief requested herein on a permanent basis pursuant to the Final Order, and for such further and other relief as may be appropriate.

Dated: July 18, 2013                    Respectfully submitted,

                                        CORNHUSKER RBM, LLC; DIATRI, LLC;
                                        MIDWEST DIAGNOSTIC MANAGEMENT,
                                        LLC; ADVANCED ANCILLARY SERVICES,
                                        LLC; AND DIAGNOSTIC P.E.T.
                                        NETWORK, LLC

                                        By: /s/ Paul M. Bauch
                                            One of Their Attorneys

14

Paul M. Bauch (ARDC #6196619)
Carolina Y. Sales (ARDC #6287277)
BAUCH & MICHAELS, LLC
53 W. Jackson Boulevard, Suite 1115
Chicago, Illinois 60604
Tel: (312) 588-5000
Fax: (312) 427-5709

15